UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MELVIN A. WILLIS, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. 4:22 CV 415 CDP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Movant Melvin A. Willis's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In December 2019, Willis pleaded guilty to three counts of possession with intent to distribute cocaine, heroin, and a mixture containing fentanyl. (Case No. 4:18 CR 750 CDP ("Crim.") ECF 86.) I sentenced him to 120 months' imprisonment and three years' supervised release. Willis now argues that his conviction and sentence are constitutionally infirm because his counsel was ineffective. As explained below, I previously rejected his arguments when I denied his motion to withdraw his guilty plea, and they are all contradicted by the record. I will accordingly deny Willis's motion to vacate.

## Background

In May 2018, St. Louis County Police Detective Ryan Hanson investigated narcotics sales in St. Louis County as part of the Multi-Jurisdiction Drug Task Force.  Through a confidential informant ("CI"), Det. Hanson learned of crack cocaine sales in Wellston county by a person known as "MLOC," who Det. Hanson later identified as Melvin Willis.  Thereafter, Det. Hanson used the CI to make two controlled purchases of drugs either from Willis or his girlfriend, Nanyell Wright.  The CI recorded these transactions with a Kel transmitter.

Det. Hanson used this information to procure two warrants to aid him in his investigation.  The first was a precision location information warrant ("PLI") authorizing the installation and monitoring of a pen register and trap and trace device on Willis's phone, as well as ordering AT&T Cingular to provide investigators with telecommunications records and assistance.  (Crim. ECF 77-1.) The second was a warrant to search Willis's residence for "Cocaine, packaging, weighing and measuring devices, U.S. Currency, drug transaction records, weapons, safes and other instruments of criminal activity."  (Crim. ECF 43-1 at p. 1.)

On July 12, 2018, Det. Hanson and other Task Force detectives set out to execute the search warrant for Willis's residence.  Before searching the residence,

2

however, they located Willis and arrested him on an outstanding arrest warrant from St. Louis County.  They searched him and found $1,671, a phone, and eight individually knotted bags containing cocaine base.  With Willis's consent, they also searched his car and seized a loaded Ruger pistol and a 15-round magazine.

The officers then proceeded to Willis's home and found:

> a plastic bag with numerous clear capsules containing a brown powder in the master bedroom, along with a plastic bag containing a black tar substance, a bag with an off-white chunky substance, Xanax, 9mm ammunition, a 9mm High Point Rifle (loaded), and a magazine loaded with five rounds of 7.62x39mm ammunition. In a second bedroom, police found a Ruger, 7.62 x 39 mm, semi-automatic rifle, a plastic bag with multiple, empty clear capsules, and a black grinder with a powdery residue. In the kitchen, police found a shoebox with a .22 caliber Sierra Six shot revolver with 41 live rounds of ammunition.

(Crim. ECF 86 at p. 3.)  A lab later identified the confiscated substances as 6.92 grams of a substance containing heroin and fentanyl, 0.12 grams of heroin, and 0.77 grams of marijuana.

In September 2018, Willis was indicted with three counts of possession with intent to distribute cocaine base, heroin, and fentanyl in violation of 21 U.S.C. § 841(a)(1), two counts of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c), and two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

3

On July 13, 2019, Willis moved to suppress evidence seized during his arrest and the search of his home because he claimed Det. Hanson's affidavit in support of the search warrant lacked probable cause.  In the affidavit, Det. Hanson described his investigation and surveillance of Willis, including the information he received from his CI, the controlled purchases, and his observation of what appeared to be hand-to-hand drug transactions.  (Crim. ECF 43-2.)   Willis claimed that this affidavit provided no details about the alleged pattern of drug distribution Det. Hanson observed, did not specify the precise dates of the controlled drug purchases—Det. Hanson only noted that they occurred in May 2018—and did not mention the PLI warrant.   Willis also moved to compel the Government to provide the audio recordings of the controlled purchases, claiming that they likely contained exculpatory information.

Magistrate Judge David D. Noce held a hearing on Willis's motions.  There, Det. Hanson testified that he believed the controlled buys from Willis and his girlfriend occurred in "June 2018," though he was "not hundred percent sure the exact date," and that he did not know whether the drugs seized during the alleged buys were tested by a crime laboratory.  (Crim. ECF 56 at 13:1-4, 65:18-20).  In a post-hearing brief, Willis further argued that this testimony showed that the Det.

4

Hanson's affidavit in support of his search warrant application was false and misleading.

Judge Noce recommended that I deny Willis's motion because there was more than enough evidence to support probable cause. He noted that the two controlled purchases from Willis and his girlfriend, as well as Det. Hanson and his team's observation of what they believed were distributions of cocaine involving Willis's residence, strongly indicated an ongoing drug trafficking operation. He found that the search of Willis's person was lawful not only because the police had probable cause to believe Willis had committed unlawful drug trafficking, but also because there was a known and verified arrest warrant for him at the time of the arrest. Judge Noce also denied Willis's motion to compel discovery because the CI was not a witness to the facts to be proved at trial, and the recordings could potentially disclose the CI's identity.[1]

Willis objected to Judge Noce's recommendation, and I reviewed Willis's motion *de novo*. On December 3, 2019, I held a hearing on Willis's objections and additional pro se motions to suppress. There, his counsel further argued that there

---

[1] A public defender appointed to represent Willis was allowed to review these recordings to determine if there was any relevant or exculpatory information on them. However, Willis moved for new counsel in March 2019, and it appears from the record that his replacement counsel did not review these recordings.

5

was nothing incriminating in the audio recordings of the controlled buys, and that the lack of detail in Det. Hanson's affidavit made it impossible to present alibi witnesses to the alleged drug transactions. At the end of the hearing, I reached the same conclusion as Judge Noce: there was more than sufficient evidence supporting probable cause.

About a week later, Willis entered a written plea agreement in which he pleaded guilty to the three drug charges in exchange for the dismissal of the remaining firearms charges. At the change of plea hearing, Willis testified under penalty of perjury that he read the agreement and discussed it with his lawyer before signing, that everything in the agreement was true, and that he was satisfied with his counsel's representation. I specifically asked him if there was anything Willis wanted his counsel to do in representing him that counsel failed or refused to do, and Willis answered, "No. He did everything." (Crim. ECF 92 at p. 5.) I also asked him if anyone forced him to plead guilty, and he said "No." (*Id.* at p. 20.) Satisfied that Willis's plea was knowing and voluntary, I accepted his guilty plea to the three drug charges.

Willis changed his mind a month later. On January 15, 2020, he filed a pro se motion to withdraw his guilty plea, claiming that his counsel coerced him into the plea agreement and was ineffective during the hearings on his motions to

6

suppress.  Among other things, he claimed his counsel was ineffective by "failing to argue the inconsistent statements, omission of recordings in the affidavit, and no technical data for the usage of the PLI," (Crim. ECF 90 at p. 1); failing to file a motion "to compel the government to lift the protective order on the recordings and have them heard in open court," (*Id.* at p. 2); and failing "to bring to the courts attention the documents that showed Plain errors, the variety of signatures on the complaint and search and seizure warrant, return inventory sheets are different from what was left at the residence[.]"  (*Id.* at p. 3.)  He also noted that "there was no dates, times, or months of the alleged surveillance using the PLI or visual surveillance, and it prejudiced my defense because I was unable to provide an alibi witness as to where I was on the days of the alleged surveillance."  (*Id.*)

     I denied Willis's motion.  At the conclusion of a hearing, I explained to him:

>You were under oath when you told me all these things were true.  You were under oath when you told me you were guilty.  You were here in court when we had the hearing on the objections to the Report and Recommendation and the hearing on the new issue motions.  I heard those motions, heard the arguments. Your lawyer made all those arguments that you wanted him to make, and the things you're claiming simply are incorrect.
>
>And in going through all of this, you've -- you've pointed to one thing that you say wasn't true, but looking at the plea -- in the plea agreement itself, but looking at the plea, you very much said it was true, and you admitted all of the -- all of the facts that were in there.

7

>   When you were here in front of me -- you're saying you were coerced, but I asked you that, and you said you weren't, and you were under oath then.
>
>   And when I asked you if you were satisfied with [counsel's] representation, you said, "Yes," and I asked if there was anything you wanted him to do that he's failed or refused to do, and you said, "No, he did everything." You didn't have to say that. You said that to me, and you were under oath, and I believed you at the time, and I believe you now in the sense that I believe [counsel] did everything you asked him to do.
>
>   There's simply no basis for you to withdraw your plea. You haven't given any fair and just reason at all and, certainly, no reason that would make any sense. It's just that you've changed your mind, and, you know, I specifically asked you about that too and said did you understand that this very last paragraph says, "If you plead guilty here today, you're not going to be able to change your mind."

(ECF 123 at pp. 20-22.)

I later sentenced Willis to 120 months' imprisonment and 3 years' supervised release. He appealed his conviction, but he voluntarily dismissed his appeal on April 7, 2021. (Crim. ECF 124).

Willis filed this motion to vacate his sentence on April 8, 2022, raising many of the arguments I rejected in his motion to withdraw his guilty plea. In Grounds 1 and 2, Willis claims that he told his counsel that the warrant used to search his home was forged and that he demanded his counsel to present the "official ink written complaint" at the hearing on his motion to suppress. He argues that his

8

counsel was ineffective by failing to investigate the fake warrant.[2]  In Grounds 3 and 4, Willis argues that his counsel was ineffective by failing to investigate Det. Hanson's surveillance of him, which would have yielded an alibi defense, and by failing to draw the Court's attention to the inconsistencies between Det. Hanson's testimony and his affidavit.  Finally, in Ground 5, Willis argues that his counsel was ineffective by failing to present audio recordings of the two controlled purchases to the Court which would have showed that he was not captured on the recordings.

## Discussion

To prevail on his claims, Willis must satisfy the two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, he must show that his attorney's performance "fell below an objective standard of reasonableness," *Id.* at 688.  Then he must show that this deficient performance prejudiced him, that is, there is a "reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

---

[2] Willis filed a motion to supplement in which he provided a copy of what he describes as the "official ink written complaint" that he says was left at his house.  (ECF 4.)

9

None of Willis's claims meet this standard. He does not even allege that he would have insisted on going to trial if his counsel had not made the alleged errors. His claims are also contradicted by the record: at the change of plea hearing, Willis swore that he was satisfied with his counsel's representation and that counsel "did everything" he asked. These statements are entitled to a strong presumption of verity and provide a sufficient basis to deny his claims. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Hughes*, 16 F.3d 949, 951 (8th Cir. 1994) (failure to object to counsel's performance at change of plea hearing refutes claim of ineffective assistance of counsel).

Moreover, I rejected all the arguments Willis asserts here when I ruled on his motion to withdraw his guilty plea. As I explained when I denied that motion, Willis's counsel raised all the arguments that Willis identified. Specifically, counsel argued that there were inconsistencies between Det. Hanson's testimony and affidavit (Crim. ECF 57 at p. 2), that the lack of information in the affidavit made it impossible to present alibi witnesses (Crim. ECF 122 at p. 36), and that there was nothing in the audio recordings incriminating Willis (*Id.* at p. 35). When I ruled on these arguments, I told Willis that none of the ostensible contradictions between Det. Hanson's testimony and the affidavit "detracts from the probable cause in the warrants or leads me in any way to believe that there was intentional

10

falsehood," (*Id.* at p. 39); that affidavits in support of search warrants "almost never include times, and I don't think they really have to give precise information of when they're conducting this surveillance" (*Id.* at p. 39); and that I considered his argument that there could be exculpatory information on the recordings of the controlled buys and still found there was probable cause. (*Id.* at p. 55.)

I concluded that Willis failed to provide any fair and just reason to withdraw his guilty plea—he merely regretted pleading guilty. Nothing has changed since that time. Because Willis fails to argue that he would have proceeded to trial if his counsel had provided effective assistance, his claims are contradicted by his sworn statements, and I previously rejected the arguments he reiterates here, I will deny Willis's motion.

## Evidentiary Hearing

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citations

11

omitted).  The record conclusively refutes Willis's claims, so I will not hold an evidentiary hearing.

Accordingly,

**IT IS HEREBY ORDERED** that Melvin A. Willis's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that Willis's motion to supplement [4] is denied as moot.

A separate judgment in accord with this Memorandum and Order is entered this same date.

                                                         CATHERINE D. PERRY
                                                         UNITED STATES DISTRICT JUDGE

Dated this 8th day of August, 2023.